**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALICIA VEGA KOLANO, | ) | CASE NO. 5:13-cv-00832 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| BANK OF AMERICA, NA et al., | ) | ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. 6).  This matter is fully briefed and ripe for review.

I.  Introduction

On April 12, 2013, Plaintiff Alicia Vega Kolano (Kolano)  filed a complaint against Defendants Bank of America, N.A. (BANA) and Federal National Mortgage Association (Fannie Mae) alleging  violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq. (RESPA) against BANA, and two claims under the Truth in Lending Act, 15 U.S.C. § 1601 et seq. (TILA) against both Defendants.  Defendants moved for judgment on the pleadings on all three of Kolano's claims. In response, Kolano agreed to dismiss her claim for violations of TILA under 15 U.S.C. § 1639g based on the effective date of this statutory provision.  Doc. 7 at 16.

Accordingly, Kolano's second claim for relief is dismissed without prejudice. The Court will now review whether the remaining claims survive Defendants' motion.

II.  Legal Standard

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for evaluating a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001). The Sixth Circuit stated the standard for reviewing such a motion to dismiss in *Assn. of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545 (6th Cir. 2007) as follows:

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964–65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*. (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563.

*Id*. at 548.

If an allegation is capable of more than one inference, this Court must construe it in the plaintiff's favor. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (*citing Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)). This Court may not grant a

Rule 12(b)(6) motion merely because it may not believe the plaintiff's factual allegations. *Id*. Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions. *Id*. Specifically, the complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quotations and emphasis omitted).

### III. Matters outside the pleadings

Kolano requests that this Court convert Defendants' motion into a Fed. R. Civ. P. 56 motion or exclude factual matters not contained the Complaint or Answer. Doc. 7 at 4. Specifically, Kolano argues that the following three sentences in Defendant's motion contain inappropriate references to matters outside the Complaint:

1. Plaintiff is utilizing RESPA and TILA for the sole purpose of having a vehicle for creating lawsuits that allege technical violations of these statutes, and in turn seek minimum statutory penalties and large awards of attorney's fees (Doc. 6 at 4);

2. Plaintiff does not seek this information for any legitimate purpose under either RESPA or TILA (Doc. 6 at 4); and

3. Plaintiff's counsel has created a veritable cottage industry out of these cases: http://www.troydoucet.com/;   http://www.foreclosure-fight.com/blog/tdoucet/ troy-doucet-openslaw-firm (Doc. 6 at 4 FN 10).

As a general rule, when considering a Fed. R. Civ. P. 12(c) motion, the Court is limited to considering only the pleadings; if matters outside the pleadings are considered, the Court must convert the motion to one for summary judgment. Fed. R. Civ. P. 12(d). However, there are exceptions to this rule.  A count need not convert a motion to dismiss, for example,  where the where one or more of the following exists: (1) the evidence consists of proceedings of which the

court is permitted to take judicial notice, *see Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980); (2) the documents' contents are alleged in the plaintiff's complaint, and their authenticity is unchallenged, *see Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); (3) the defendant's attachment of extrinsic material to its motion to dismiss does not rebut, challenge, or contradict anything in the plaintiff's complaint, s*ee Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993); and (4) the documents are referred to in the plaintiff's complaint and are central to plaintiffs claim, *see Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

The Court finds it unnecessary to convert the 12(c) motion into a motion for summary judgment.  The first two statements at issue are not evidence, but merely arguments by BANA, and will be considered accordingly.  The third statement contains both argument (that Plaintiff's counsel "has created a veritable cottage industry" out of RESPA and TILA cases) and directs the Court to a website presumably owned and operated by Plaintiff's counsel as evidence of the argument.  The Court need not determine whether the website is a "matter of public record" since the information on the website will not be considered for the purpose of deciding Defendants' motion.

Accordingly, the Court declines to convert Defendant's motion into a motion for summary judgment and will apply the standard of review for reviewing a motion for judgment on the pleadings.

## IV. Facts

On August 29, 2007, Plaintiff signed a promissory note ("Note") in the amount of $139,000.00 payable to Countrywide Bank, FSB.  Plaintiff secured the Note by signing a

mortgage dated August 29, 2007 ("Mortgage") secured by the property located at 9248 Lakewood Drive, N.E., Mineral City, Ohio (the "Property").  Countrywide Bank, FSB then transferred its ownership of the Note to Defendant Fannie Mae.  Defendant Bank of America is the servicer of Plaintiff's Note and Mortgage.

On May 8, 2012, Plaintiff, through counsel, mailed a letter to Defendant BANA.  BANA received the letter on May 10, 2012.  The letter requested the following information:

> 1. The name, address, and telephone number of the owner of my client's note, plus name of the master servicer of the note.
>
> 2. The date that the current note holder acquired this mortgage note, and from whom it was acquired from.
>
> 3. The date your firm began servicing the loan.
>
> 4. A complete payment history of how payments and charges were applied, including the amounts applied to principal, interest, escrow, and other charges.
>
> 5. The current interest rate on this loan and an accounting of any adjustments.
>
> 6. A statement of the amount necessary to reinstate this loan.
>
> 7. A complete copy of the loan closing documents, including a copy of the note and mortgage.
>
> 8. A copy of all appraisals, property inspections, and risk assessments completed for this account.

Doc. 1-1 at 1.  The letter states the reason Plaintiff believes the account to be in error as "the fees charged to this account are in excess of those allowed under the mortgage or note and should be removed."  Doc. 1-1 at 2.  The letter cost Plaintiff $64.60 for drafting and $6.20 in postage to mail.

BANA responded to Plaintiff's letter on June 4, 2012 providing the name, address, and telephone number for the Note's owner, Defendant Fannie Mae, but stated additional time would

be required to respond to Plaintiff's remaining requests. On July 23, 2012, BANA sent a second response to the letter (the "July response").  Kolano claims BANA's July response is deficient.

### A.  Plaintiff's claim against Defendant Bank of America, N.A. for violating 12 U.S.C §2605(e)

The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq., ("RESPA") is a consumer protection statute that regulates, inter alia, the servicing of real estate loans.  12 U.S.C. § 2601(a), (b); *Empire Title Services, Inc. v. Fifth Third Mortg*. Co., 2013 WL 1337629, *4 (N.D. Ohio Mar 29, 2013); *Augenstein v. Coldwell Banker Real Estate, LLC*, 2011 WL 3837096, *3 (S.D. Ohio Aug 30, 2011).  Plaintiff claims that Defendant Bank of America, N.A. failed to properly respond to her letter, thereby violating 12 U.S.C. § 2605.

Under 12 U.S.C. § 2605 a borrower may request information related to the servicing of her loan by submitting a "qualified written request" ("QWR") to the loan servicer. A QWR is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Section 2605(e)(2) sets forth the ways in which a loan servicer must then respond to the QWR. The loan servicer may:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).  Thus, BANA had three ways to respond to Kolano's QWR: 1) make corrections to Kolano's account and inform her in writing of the correction; 2) investigate Kolano's request and provide written explanation that includes the reasons the BANA believes that the account is correct; or 3) investigate the matter and provide a written response to Kolano setting forth the reasons BANA could not obtain the information she requested. In each response, BANA is required to provide the contact information of a representative who could provide further assistance.

Here, Kolano mailed a self-titled "QWR" letter to BANA on May 8, 2012.  BANA initially responded to Kolano's letter on June 4, 2012, and followed up on July 20, 2012. Kolano alleges that BANA failed to comply with the requirements of 12 U.S.C. § 2605(e)(2).  Doc. 7 at 9.  However, Kolano does not state the manner in which BANA failed to comply with § 2605(e)(2) in either her brief in opposition or in her Complaint. Id.; Doc. 1 at 5.

BANA's July response to Kolano's QWR included 1) a payment history listing the transactions for Kolano's loan; 2) a listing of the fees that had been charged against her account

but not reflected in the payment history; 3) copies of the Mortgage, Note, Truth in Lending Disclosure Statement(s), Uniform Residential Loan Application, Good Faith Estimate(s), Notices of Right to Cancel, Appraisal Report, and Settlement Statement; 4) the name, address, and contact phone number for the servicer of the loan; 5) the interest rate of the loan; 6) verification of debt; the name, address, and contact phone number for the owner of the note; and 7) name, address, and contact phone number of a representative who could provide further assistance. Additionally, this response states that Kolano's QWR letter seeks information beyond that which is available under 12 U.S.C. § 2605, explains that BANA had ordered a reinstatement calculation and would provide same under separate cover, explains why the original Note was not being provided, and explains that BANA had ordered a payoff demand statement and would provide same under separate cover.

BANA has demonstrated that Kolano requested a substantial amount of information, some of which goes beyond the scope of 12 U.S.C. § 2605.  BANA has also demonstrated that it responded to Kolano's QWR in writing and provided her with a substantial amount of information. When pleading her cause of action, Kolano engages in the very type of vague and general pleading that *Twombly* seeks to prevent.  See Doc. 1 at para. 29-34. In her response, Kolano again fails to point to any facts that would "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly*, 550 U.S. at 555. Because Kolano merely relies on a general and broad recitation of the statutory language, she has failed to sufficiently plead her claim that BANA violated 12 U.S.C. § 2605.  *Id*. (Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action.").

Accordingly, Plaintiff Kolano's claim against Bank of America, N.A. for violations of 12 U.S.C. § 2605 is hereby dismissed.

**B.  Plaintiff's claim against Defendants Bank of America, N.A.  and Fannie Mae for violating 15 U.S.C. § 1601 et seq. (TILA)**

The Truth in Lending Act, 15 U.S.C. § 1601, et seq., ("TILA") has several purposes: "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)). The statute thus requires creditors/owners to "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Id*. Given its purpose, the Sixth Circuit has "repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer." *Marais v. Chase Home Finance LLC*, 736 F.3d 711, 714 (6th Cir. 2013); *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998). By its terms, TILA provides for an action for damages against "any creditor who fails to comply with any requirement imposed under" its parts. 15 U.S.C. § 1640(a).  Kolano bases her TILA claim on 15 U.S.C. § 1641(f)(2).

1.  BANA is not liable under 15 U.S.C. § 1641(f)(2).

Kolano argues that BANA is liable as a servicer under 15 U.S.C. § 1641(f)(2).  This issue was recently decided in by the Sixth Circuit in *Marais*.  There the court held "TILA expressly exempts servicers from liability unless the servicer was also a creditor or a creditor's assignee." *Marais*, 736 F.3d at 719.  Kolano only alleges that BANA was a servicer of the loan, therefore

BANA cannot be liable for violating 15 U.S.C. § 1641(f)(2).  Accordingly, Kolano's claim against Bank of America, N.A. for violating 15 U.S.C. § 1641(f)(2) is hereby dismissed.

    2.  Fannie Mae may be held vicariously liable under 15 U.S.C. § 1641 for BANA's deficient response to Kolano's QWR letter.

15 U.S.C. § 1641(f)(2) provides that "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." Kolano argues that BANA failed to provide the requested information for the "master servicer." Fannie Mae defends Kolano's claim by arguing that a mortgage owner may not be held vicariously liable for a mortgage servicer's failure to comply with 15 U.S.C. § 1641(f).

Fannie Mae's argument fails.  A mortgage owner may be held vicariously liable for a servicer's failure to comply with 15 U.S.C. § 1641(f).  *See Marais*, 736 F.3d at 716-17; *Kissinger v. Wells Fargo Bank, N.A.*, 888 F.Supp.2d 1309, 1315 (S.D. Fla. Aug 30, 2012).  In *Kissinger*, the court stated:

> Because TILA does not impose liability upon a servicer who is not an owner or assignee of a note, the private right of action that Section 1640(a) creates would be meaningless, unless agency principles permit a creditor to be held liable for Section 1641(f)(2) violations committed by its servicer.  To avoid rendering Section 1640(a) superfluous, this Court concludes that agency principles apply, and creditors may be held vicariously liable for the Section 1641(f)(2) violations of their servicers.... This conclusion gives force to the disclosure provision in Section 1641(f)(2) and comports with the intent of TILA to be remedial in nature ... and ... [to] be construed liberally in order to best serve Congress's intent.

888 F.Supp.2d at 1315 (citation omitted).  Likewise, the Sixth Circuit in *Marais* found that a servicer of loan could not be liable to the debtor under TILA, for any failure to provide the debtor with identity of the creditor, because TILA only imposes liability on creditors. 736 F.3d at 718-19.  To find that vicarious liability does not apply to Fannie Mae would render § 1640(a) meaningless.  *See Marais*, 736 F.3d at 716  (citation omitted).

Fannie Mae also argues that Kolano has failed to plead a substantive violation of 15 U.S.C. § 1641(f). BANA's July response identified itself as the servicer of the loan and stated that it has been the servicer of the loan since the inception of the loan.  Kolano suggests that because BANA failed to identify itself as the "master servicer," this identification was deficient under the statute.  Citing to *Kissinger v. Wells Fargo Bank, N.A.*, 2013 WL 360027 (S.D.Fla. Jan 30, 2013) ("*Kissinger II*"), Fannie Mae argues that the fact that BANA does not use the words "master servicer" is immaterial since BANA stated that it had been the servicer of Kolano's loan since the Loan's inception..  The *Kissinger II* court concluded on summary judgment that "as a matter of law, [ ] it is not necessary that the response to a creditor's inquiry explicitly state that a servicer is the master servicer where adequate information is provided to the creditor for the creditor to make that determination." 2013 WL 360037, *4.  Previously, however, the same court found that whether a loan servicer's response to a borrower's inquiry provided the borrower with sufficient information to conclude that servicer was the loan's "master servicer" is not a matter to be decided on a motion to dismiss. *Kissinger*, 888 F.Supp.2d at 1312.

This Court agrees with the analysis in *Kissinger* and finds that whether BANA's response to Kolano's QWR provided the Kolano with sufficient information to conclude that BANA was her loan's "master servicer" is not a matter to be decided on a motion to dismiss.

Fannie Mae's motion for judgment on the pleadings as to Plaintiff Kolano's claim for violation of 15 U.S.C. § 1641(f) is DENIED.

V.  Conclusion

For the foregoing reasons, Defendants motion for judgment on the pleadings is DENIED IN PART and GRANTED IN PART. Plaintiff Kolano's claim against Bank of America, N.A. for violations of 12 U.S.C. § 2605 is hereby dismissed.  Plaintiff Kolano's claim against Bank of

America, N.A. for violation of 15 U.S.C. § 1641(f) is dismissed. Plaintiff's claim against Fannie

Mae claim for violation of 15 U.S.C. § 1641(f) is the sole remaining claim.

IT IS SO ORDERED.

March 19, 2014                    /s/ John R. Adams
                                 JUDGE JOHN R. ADAMS
                                 UNITED STATES DISTRICT COURT